# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1138

_____

United States of America,            *
                                              *

             Appellant,       *

                                    *    Appeal from the United States

      v.                            *    District Court for the

                                    *    District of South Dakota

Caleb Gilkerson,               *

                                    *        [PUBLISHED]

            Appellee.        *

_____

Submitted: November 12, 2008
Filed: February 24, 2009

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

PER CURIAM.

The United States appeals the district court's holding that an individual does not qualify as a "migratory bird preservation facility" for purposes of the Migratory Bird Treaty Act (MBTA), 16 U.S.C. §§ 703-712. We reverse.

## I.    BACKGROUND

Caleb Gilkerson owns and operates Steamboat Game and Fish, Inc., in Pierre, South Dakota. Steamboat, among other services, processes hunted geese brought in by customers. Hunted migratory game birds, including geese, when brought to Steamboat for processing, must be tagged pursuant to the MBTA. 16 U.S.C. § 704;

50 C.F.R. §§ 20.11, 20.36, and 20.81. The tag must describe the species of the bird, the number of birds shot, the date the bird was shot, and the hunter's address, and must contain the hunter's signature. 50 C.F.R. § 20.36. Receiving or possessing a migratory game bird without the required tag is a misdemeanor. 16 U.S.C. §§ 703, 707(a).

Bob Prieksat is a Fish and Wildlife Service Officer for the United States Department of the Interior. Prieksat went to Steamboat looking for an individual suspected of hunting geese without a license and who reportedly brought the geese to Steamboat for processing. While looking through the tags for the suspect's name, Prieksat noticed that several of the tags were labeled "traded out,"[1] a process that is against federal regulations. Gilkerson then showed Prieksat the freezer, and Prieksat noticed that dozens of geese were not tagged. Prieksat subsequently ticketed Gilkerson for having untagged geese.

The magistrate judge found Gilkerson guilty and ordered that he pay a fine of $2,100 and be placed on probation for six months. Gilkerson appealed this decision to the district court. On appeal, the district court began its analysis by taking judicial notice of Prieksat's unpopularity in the community and of the public outcry for his removal as a Fish and Wildlife Service Officer.[2] After noting the challenges facing law enforcement officers and the confusing language of the MBTA, the district court

---

[1]"Trading out" is a process whereby hunters bring in freshly hunted geese for processing and take geese that have already been processed instead of returning when the processing of their hunted geese is finished.

[2]Federal Rule 201 allows judicial notice of "adjudicative facts." Fed. R. Evid. 201(a). Adjudicative facts are facts relevant to the case currently before the court. Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1128 (8th Cir. 2000). Prieksat's popularity is wholly irrelevant to this case and to the issue of whether Gilkerson qualifies as a "migratory bird preservation facility" under the MBTA. Thus, the district court erred in taking judicial notice of Prieksat's popularity.

then "move[d] to the heart of [the] case." In doing so, the district court noted that the charged crime only applies to a "migratory bird preservation facility" and held sua sponte that because Gilkerson is a "human being" and not by definition a "facility," the charged crime does not apply to him, thus reversing the magistrate judge. The government appeals arguing an individual qualifies as a "migratory bird preservation facility" within the meaning of the MBTA regulations. We agree.

## II.    DISCUSSION

We review the statutory or regulatory definition of a word de novo. In re Old Fashioned Enter., Inc., 236 F.3d 422, 425 (8th Cir. 2001).

The MBTA regulations state, "[n]o migratory bird preservation facility shall receive or have in custody any migratory game birds unless such birds are tagged as required by [50 C.F.R.] § 20.36." 50 C.F.R. § 20.81. The district court noted that the defendant was not charged with being a "migratory bird preservation facility." This was the logical conclusion, the district court noted, based on "the fact that no human being can be a 'facility.'" The district court acknowledged that 50 C.F.R. § 20.11(e) defined a "migratory bird preservation facility" as including a "person," but held Gilkerson was not a "facility" for purposes of the MBTA for two reasons. First, the Amended Information failed to reference section 20.11(e). Second, Gilkerson was an employee of Steamboat, a corporation, and was protected from criminal prosecution by the corporate veil. The district court also cited Lopez v. Gonzales, 127 S. Ct. 625 (2006), for the proposition that the government cannot "trump the ordinary meaning and the conventions of the English language."

We disagree with the district court's analysis; the Amended Information did not need to reference section 20.11(e). After a verdict, an information is "liberally construed in favor of sufficiency." United States v. Mallen, 843 F.2d 1096, 1102 (8th Cir. 1988). To be sufficient, the information must contain the elements of the offense

and inform the defendant of the charges against him, as well as "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). An information satisfies these requirements if it states "the offense in the words of the statute itself." Id.

The Amended Information in this case alleged Gilkerson violated 16 U.S.C. §§ 703, 707(a) and 50 C.F.R. §§ 20.36, 20.81, and used the language of the MBTA and the corresponding regulations to charge the crime. Further, the regulatory section defining "migratory bird preservation facility" is incorporated throughout the regulations. 50 C.F.R. § 20.11. Thus, any alleged failure to define "migratory bird preservation facility" or to cite to where that definition could be found is immaterial. See Smith v. United States, 713 F.2d 387, 388 (8th Cir. 1983) (per curiam) (citing Hamling, 418 U.S. at 117).

A "migratory bird preservation facility" is defined in the MBTA regulations as, among other things, a "person who, at their residence or place of business and for hire or other consideration . . . receives, possesses, or has in custody any migratory game birds belonging to another person for purposes of picking, cleaning, freezing, processing, storage or shipment." 50 C.F.R. § 20.11(e). Additionally, "person" is defined in 50 C.F.R. § 10.12 as "any individual, firm, corporation, association, partnership, club, or private body, any one or all, as the context requires." This definition applies throughout subchapter B of the regulations–where 50 C.F.R. §§ 20.11 and 20.81 are found–unless otherwise defined in the applicable subchapter. 50 C.F.R. § 10.11. "Person" is not otherwise defined in the applicable subchapters. Thus, an individual is a "migratory bird preservation facility" for purposes of the MBTA.[3]

---

[3]The district court's reliance on Lopez v. Gonzales, 127 S. Ct. 625, to hold otherwise is misplaced. The Supreme Court in Lopez addressed the definition of "illicit trafficking" for purposes of 8 U.S.C. § 1101(a)(43)(B). Id. at 628-29. While the Court noted, as the district court suggests, "we do not normally speak or write the

Nevertheless, the district court held that because Gilkerson was an employee of a corporation, rather than a sole proprietor, and as a stockholder did not own the corporation,[4] he could not be charged with the crime. The MBTA and its regulations, however, define "person" to include individuals and corporations, and fail to exclude employees, stockholders, or corporate officers. See also United States v. Ne. Pharm. & Chem. Co., Inc., 810 F.2d 726, 745 (8th Cir. 1986). Thus, the district court erred in holding Gilkerson could not be individually liable under the MBTA because he was not a "migratory bird preservation facility."

## III. CONCLUSION

Having concluded that the MBTA definition of "migratory bird preservation facility" includes an individual, we reverse and remand for further proceedings consistent with this opinion.

_____

Government's way," id. at 631, this holding was in the context of an undefined term. Id. at 628. Indeed, the Lopez Court held "legislatures [] are free to be unorthodox. Congress can define an aggravated felony of illicit trafficking in an unexpected way. But Congress would need to tell us so . . . ." Id. at 630. In this case, Congress specifically authorized the Department of the Interior to define "migratory bird preservation facility." Thus, even if defining "facility" as including a person "trump[s] the ordinary meaning and the conventions of the English language," Congress is able to do so, and in fact has done so in this case.

[4]Although not dispositive, contrary to the district court's holding, stockholders do own the corporation the stock represents. A stockholder or shareholder is defined as one who owns stock or shares of a corporation and "[a] share represents an . . . ownership interest in the corporation." Black's Law Dictionary 1408 (8th ed. 2004).